Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT
for the

District of Maryland

Baltimore Division

| | |
|---|---|
| Benjamin Woods <br> *Plaintiff(s)* <br> (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) <br> -v- <br> Board of Regents of University System of Maryland <br> *Defendant(s)* <br> (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Case No. _____ <br> *(to be filled in by the Clerk's Office)* |

## COMPLAINT AND REQUEST FOR INJUNCTION

I. **The Parties to This Complaint**

  A. **The Plaintiff(s)**

  Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

  | | |
  |---|---|
  | Name | Benjamin Woods |
  | Street Address | 7970 Sandleford Ave. |
  | City and County | North Canton, Stark County |
  | State and Zip Code | Ohio, 44720 |
  | Telephone Number | 330-418-7653 |
  | E-mail Address | thebwoodsie@gmail.com |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Board of Regents of the University System of Maryland |
| Job or Title *(if known)* | |
| Street Address | 3300 Metzerott Rd. |
| City and County | Adelphi, Prince George's |
| State and Zip Code | Maryland 20783 |
| Telephone Number | 301-445-2740 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

E-mail Address *(if known)*

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question  ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Title IX of the Education Amendments Act of 1972, Codified at 20 U.S.C. § 1681-1668, Public Law No. 92-318. Governing regulations are at 34 C.F.R. § 106.45. Consitutional procedural due process rights are also relevant to resolution of the issue presented.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual
   
   The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

   b. If the plaintiff is a corporation
   
   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual
   
   The defendant, *(name)* _____, is a citizen of

    the State of *(name)* _____ . Or is a citizen of

    *(foreign nation)* _____ .

  b. If the defendant is a corporation

    The defendant, *(name)* _____ , is incorporated under

    the laws of the State of *(name)* _____ , and has its

    principal place of business in the State of *(name)* _____ .

    Or is incorporated under the laws of *(foreign nation)* _____ ,

    and has its principal place of business in *(name)* _____ .

  *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

  The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

  _____

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

  A. Where did the events giving rise to your claim(s) occur?

    The facts underlying the Title IX sexual misconduct claim occurred at off-campus locations, all located in Prince George's County Maryland. The hearing is being conducted virtually. The University and its Title IX Office are located in College Park, MD on the campus of the University of Maryland, College Park.

  B. What date and approximate time did the events giving rise to your claim(s) occur?

The investigation that led to the ongoing hearing has been ongoing since August 26, 2024. Plaintiff's procedural requests and request to dismiss the Title IX charges were formally and finally denied this morning, September 30, 2025, by the hearing officer retained by the University of Maryland.

C.  What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

On August 26, 2024, a formal complaint making allegations of sexual misconduct was filed by four Jane Doe accusers against Plaintiff. Their identities are known to Plaintiff but he refers to them anonymously for privacy and because they are not defendants. The Defendant, University of Maryland, through its Office of Civil Rights and Sexual Misconduct, purportedly proceeded under its Policy and Procedures for investigating and resolving formal complaints of sexual misconduct. That Policy and Procedure were enacted to ensure compliance with regulations promulgated by the Department of Education Office of Civil Rights in August of 2020 (hereinafter "the 2020 Regulations").

Title IX:

The 2020 Regulations were passed specifically to ensure that respondents in Title IX sexual misconduct proceedings (like Plaintiff) are granted due process protections including the right to a hearing wherein meaningul cross-examination is required of both the Parties and any alleged witnesses. This is to effectuate the requirement that respondents be presumed innocent until proven liable by a preponderance of the evidence in proceedings that protect the respondents constitutional rights prior to a decision and sanctioning which could cause significant and irreperable disciplinary, educational, professional, and moneyary consequences.

Under the 2020 Regulations and federal caselaw, a University violates Title IX's bar on discrimination on the basis of sex when it acts with "deliberate indifference" upon learning of potential discrimination based on sex and in investigating and adjudicating the allegations themselves. This standard, codified throughout 34 C.F.R. § 106.45, was based on the Supreme Court's decisions in Davis v. Monroe County Board of Education, 526 U.S. 629 (1999) and Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998). The 2020 Regulations make it such that a school violates Title IX's non-discrimination bar if the three following elements are met: (1) conditions exist to trigger a school's response obligations (actionable sexual harassment), (2) the school's actual knowledge of the events/inadequate response, and (3) action by the University that amounts to deliberate indifference in response to the report of prohibited sexual misconduct. A university's response to allegations of sexual misconduct under the 2020 Title IX Regulations is deliberately indifferent if it is "clearly unreasonable under the circumstances." That standard is derived from the Davis/Gebser framework and is incorporated into UMD's policies. Importantly for the immediate case, "[t]hese final regulations impose specific requirements on recipients [of federal funding under Title IX] responding to sexual harassment, and failure to comply constitutes a violation of these Title IX regulations and, potentially, discrimination under Title IX. In addition to the specific requirements imposed by these final regulations, all other aspects of a recipients response to sexual harassment are evaluated by what was not clearly unreasonable in light of the known circumstances." See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,046 (May 19, 2020.).

Title IX investigations and adjudications of formal complaints of sexual misconduct must comply with the procedures and due process protections specifically engrafted in 34 C.F.R. § 106.45, which includes the rights to review a report summarizing all evidence collected by the University, a chance to respond in writing to that information and the allegations, and a live hearing in which an advisor of choice gets the chance to cross-examine both the accuser ("the complainant") and any supporting witnesses. The 2020 Regulations require that the hearings be chaired by a "hearing officer," who is not dissimilar to a judge. Under the 2020 Regulations, the hearing officer and university-appointed investigator must be free of any sex/gender bias both systemically and based on the specific identity of both parties. The hearing officer rules on objections of relevance and redundancy during cross-exmination, weighs the evidence, evaluates credibility and makes credibility determinations, and ultimately makes a decision as to whether a sexual misconduct policy violation has been proven by the university by a preponderance of the evidence. The hearing officer then writes this finding into a written decision explaining how they came to that conclusion.

Facts of this Case:

Initially, the formal complaint was filed by four accusers at the same time, and despite the fact that there were three discrete events alleged in total by the four accusers, spanning more than a year and featuring wholly distinct alleged conduct, the University consolidated the four complaints into one proceeding purportedly ursuant to the 2020 Regulations, at 34 C.F.R. § 106.5(b)(4). The investigative phase (under the Policy and Procedure) proceeded through the promulgation of the preliminary investigative report and final investigative report contemplated by the Policy and Procedure.

A hearing officer was eventually assigned to chair the hearing in which all four complaints would be tried at once. After reviewing the final investigative report, the Plaintiff requested the proceedings be severed into individual proceedings, one per accuser. Importantly to Plaintiff's immediate claim, the University directed the Plaintiff to put that request, and the argument as to why consolidation under the 2020 Title IX Regulations, a letter to the hearing officer, Alyssa McGinn, Esq. Alyssa McGinn subsequently severed the complaint into three investigations/hearings. She directed that the large report be re-written to account for the severance and allow for the facts of each accuser to be isolated for discrete resolution by different and independent hearing officers who would not review the allegations in light of those made by the accusers. That is to say, there would now be three formal processes: Jane Doe 1, Jane Doe 2 and 3 (whose allegations featured conduct occuring on the same night), and Jane Doe 4. In the Final Investigative Report, the accusers were labeled Complainants 1, 2, 3, and 4.

In response to this, the University of Maryland acted in contradiction to the hearing officer's demand. Instead of actually separating the final investigative report into three different reports, each pertaining to one of the allegations, the University simply relabed the complainants in the report as "witnesses," keeping their entire narratives in all three reports. Worse, the very first exhibit included for the investigator's review is the formal complaint filed by all four accusers together, meaning the investigator would review the consolidated complaint before ever reading the amended complaint speaking individually to either Jane Doe 1, Jane Does 2 and 3, or Jane Doe 4.

Hearing officers were assigned for the three hearings, and the first hearing is occuring as this request for a temporary restraining order is filed. Once the hearing officer for Jane Doe 1 was chosen, Jane Potter, Esq., the plaintiff promptly raised multiple procedural concerns alleging violations of the University's Policy and Procedures for adjudicating complaints of sexual misconduct under Title IX and violations of the 2020 Title IX Regulations in a letter to the hearing officer. Just as he was directed to raise his concerns with the hearing officer directly in the case of the earlier-requested severance, UMD directed Plaintiff to raise his concerns with the new hearing officer assigned to chair Hearing 1, featuring the allegations made by Jane Doe 1.

Mr. Woods did so both to the Title IX Office (some procedural allegations of error were made repeatedly in multiple letters to the University and hearing officer), detailing the following errors in procedure. However, Hearing Officer Potter informed plaintiff at the outset of Hearing 1 that it was NOT part of her job to rule on the issues raised. Plaintiff asked if the proceedings could take a short break so that Plaintiff could raise them to the university's Title IX Coordinator, Angela Nastase, Esq. Hearing Officer Potter denied the request for the brief adjouurnment (a potential Title IX violation in and of itself detailed below). This complaint alleges that the University's response to these allegations amounts to Title IX discrimination on the basis of sex because its response to his concerns amount to deliberate indifference in that the refusal to remedy the violations of Plaintiff's due process rights is clearly unreasonable in light of the circumstances. That is to say, the University's decision to learn of the issues Plaintiff raised and do absolutely nothing at all to remedy the serious issues raised was deliberately indifferent and clearly unreasonable. Each issue raised, the context of the University receiving actual knowledge of the due process violations, and the schools defective and clearly unreasonable response are detailed indvidually below.

(1) UMD Has Charged Plaintiff with Title IX Offenses Despite Such Charges Not Being Allowable Under Law and UMD's Policy and Procedures

Plaintiff was charged with three offenses under the University's Policy and Procedures: (1) Sexual Assault-- Fondling; (2) Sexual Harassment Hostile Environment; and (3) Other Sex-Based Offenses. Under the Policy and Procedure, the first two are charges that can only be brought specifically pursuant to, and defined by, the 2020 Regulations. The final charge is a purported violation of the school's policy only and does not constitute a Title IX offense because the conduct occurred off campus and not as part of an educational program or activity. UMD cannot pursue Title IX adjudications if the conduct occurred off campus and outside the context of an educational program or activity.

When Plaintiff was informed of the allegations against him, the notice of formal complaint informed him that the unviersity would be proceeding on all three charges even though it directly acknowledged in the notice that the alleged conduct occurred off campus and not as part of an educaitonal activity or program. The practical upshot of refusal to dismiss the extra-jurisdictional charges is that the hearing officer retains three definitions from which she may find liability, two of which the 2020 regulations explicitly exclude from consideration with the conduct occurred off campus and not as part of an educational program or activity. The following is directly reproduced from Plaintiff's letter to Hearing Officer Potter and Title IX Director Nastase. Plaintiff reincorporates that argument here, and submits that the issue will be more thoroughly briefed in a memorandum supporting a request for a preliminary injunction.

—

"As the Amended Notice also accurately notes, the alleged conduct occurred entirely off-campus and not as part of an educational program or activity. It provides,

Prohibited Conduct:
The alleged conduct may constitute "Prohibited Conduct" and falls within the University's jurisdiction as described in the Policy. Therefore, the University is not dismissing this Formal Complaint and will address the alleged conduct under the University's Policy and Procedures.
The alleged conduct is not, however, designated as Title IX-based Prohibited Conduct because the alleged conduct did not occur on property owned or controlled by the University nor within an Education Program or Activity. As stated above, the University will address the alleged conduct under the Policy Procedures.

However, the Policy and Procedure do not allow for charges of Sexual Assault—Fondling, and Sexual Harassment Hostile Environment, wholly Title-IX based offenses, when the conduct occurred off campus and not as part of an educational program or activity. The University of

Maryland Procedures for Investigative and Resolving Allegations of Sexual Harassment and Other Sexual Misconduct § (V)(F) provides in full,

As indicated above in Section V.B of this Policy, the Title IX Officer or designee will gather information to assess whether the reported conduct is designated as Title IX-based Prohibited Conduct. A decision not to designate the alleged conduct as Title IX-based Prohibited Conduct constitutes a mandatory dismissal of the case for Title IX purposes [An attached footnote reads "This mandatory dismissal is required by 34 C.F.R. § 106.45(b)(3)(i).]. However, this dismissal does not prevent the University from investigating or resolving the Formal Complaint through these Procedures if the reported conduct would meet the definition of Other Sexual Misconduct or Retaliation in Sections VIII.B and VIII.C of this Policy, if substantiated. The University will investigate and adjudicate these non-Title IX-based forms of Prohibited Conduct using these

same Procedures. Dismissal under this Policy and Procedures also does not preclude a referral to another University process and/or office as indicated in Section V.B, as may be appropriate in cases where the reported conduct may violate other University Policies.

The Policy and Procedure plainly do not allow for the investigation and sanctioning of Sexual Assault—Fondling, and Sexual Harassment Hostile Environment as Title IX offenses when the conduct occurred off campus and outside the scope of an educational program or activity, as the Amended Notice acknowledges. Instead, UMD's ability to sanction my alleged conduct is limited to the "Other Sexual Misconduct" delineated in Section V.B. "Other Sexual Misconduct" is broken down into six offenses, only one of which I have currently been charged: Other Sex-Based Offenses. "Other Sex-Based Offenses" is further broken down into three different offenses. Any changes to policy or procedures occurring after the date of the offense are not applicable, and, in any event, the University's jurisdiction for off-campus actions not within an educational program could only apply to the "Other Sex Based Offense" as noted below. Only one of the three offenses delineated in the "Other Sex Based Offenses" section has cognizable applicability here, Section V.B.6.c. defines this offense as "[u]unwelcome sexual advances, unwelcome requests for sexual favors, or other behavior of a sexual or gender-based nature where such conduct has the effect of unreasonably interfering with an individual's academic or work performance, i.e., it is sufficiently severe or pervasive to create an intimidating, hostile, humiliating, demeaning, or sexually offensive working, academic, residential, or social environment."

I respectfully submit that the three offenses of which I'm charged with explicitly defined as Title IX-based offenses should be dismissed for the foregoing reasons. Any analysis of my behavior in assessing liability should be limited to the definition provided in Section V.B.6.c. as a standalone and solo charge. Thank you for your consideration of the matter.

—

The Hearing Officer informed him this morning that it was not her purview to dismiss the charges and, simultaneously, denied his request to discuss the issue with Nastase prior to going forth with the hearing.

(2) Consideration of Statements and Evidence Submitted by Witnesses Not Present to be Cross-Examined in Violation of Fourth Circuit Caselaw.

As previously mentioned, the investigative reports for all three proceedings contain the allegations made by the other accusers, this time relabeled as witnesses instead of complainants. Pursuant to the 2020 Regulations, a hearing officer is not allowed to consider statements made by witnesses who do not submit to cross-examination at a live hearing. Ms. Potter, in response to this concern, ruled that she would only call two witnesses and would consider the statements made by the other accusers in their entirety notwithstanding Plaintiff's lack of ability to cross-examine them, test their credibility, and expose inconsistencies or impossibilities in their claims. Citing a Massachusetts District Court decision that stands in direct contravention of Fourth Circuit caselaw, Potter marched on in her pursuit to ram the process through to the end by book or by crook. Plaintiff's argument on the issue was detailed in his procedural concerns letter. That argument is reproduced verbatim below. Plaintiff will brief this issue more thoroughly in a memorandum supporting a request for preliminary injunction if so ordered and allowed by the Court.

—

"When the 2020 Title IX Regulations went into effect, 34 C.F.R. § 106.45(b)(6)(i) provided that "If a party or witness does not submit to cross-examination at the live hearing, the decision-maker(s) must not rely on any statement of that party or witness in reaching a determination regarding responsibility."

The United States District Court for the District of Massachusetts vacated that rule in Victim Right's Law Center, et al. v. Cardona, No. 1:20-cv-11104, 2021 WL 318573 (D. Mass. July 28, 2021). Of course, that holding is only binding in that jurisdiction.

Since Cardona was decided, the Fourth Circuit, whose holdings are binding in the state of Maryland, has had occasion to discuss the importance of cross-examination in Title IX proceedings in Doe v. University of Norh Carolina Systems, 133 F.4th 305 (2025). While the question of 34 C.F.R. § 106.45(b)(6)(i) was not in front of the Fourth Circuit in that case, the holdings in Doe v. NCS contain salient precepts that should counsel you not to consider any information or statements made and provided by any witness mentioned in the report that does not appear at the hearing and submit themselves to cross-examination. In Doe, the respondent in a Title IX action faced multiple accusers in multiple proceedings as well. In one of those proceedings (that the Court labeled Roe-4), the Court held that the lack of ability to cross-examine his accuser and any of her witnesses constituted a deprivation of due process rights requiring reversal of the sanctions imposed on him. In balancing the competing interest in Title IX proceedings, and speaking on the importance of the right of cross-examination, the Court said,

"All that said, we cannot ignore the weighty interests implicated by cross-examination in adjudications of sexual misconduct allegations in higher education settings. We acknowledge that it can take real courage for victims of sexual misconduct to come forward and report their abuse. See Deborah Turkheimer, Beyond #MeToo, 94 N.Y.U. L. Rev. 1146, 1159-63 (2019) (observing the reluctance of student victims to report sexual assaults to campus authorities). Reliving the trauma of a sexual assault is an experience that no victim could possibly welcome. The thought of having a private violation of one's bodily integrity aired in public cannot help but be unsettling. The prospect of facing ss-examination may operate as an additional discouragement to undergoing what is already a forbidding ordeal.
On the other side of the matter is the idea, embedded in the foundations of our adversarial system of justice, that cross-examination is "the greatest legal engine ever invented for discovery of the truth." Watkins v. Sowders, 449 U.S. 341, 349 (1981). Often at the heart of sexual misconduct disputes is the matter of consent. Witness credibility and recollection are crucial in such proceedings, and this renders tools for reaching the truth all the more important.
We agree with the employee defendants that a right to cross-examination in this context has not, up to this point, been clearly enough established to deny them the protection of qualified immunity. But we underscore that, as a matter of procedural due process, an accused student must be "afforded the meaningful hearing to which they are entitled. Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 630 (4th Cir. 2002). Going forward, cross-examination will materially assist in ensuring a meaningful hearing in higher-education disciplinary proceedings."
Doe, 133 F.4th, at 316-317.

Maryland state law is in accord. While the specific factual context of Doe evades presence in Maryland state caselaw, Maryland appellate courts have had many occasions to discuss the intersection of procedural due process, fundamental fairness, and the right (or lack thereof) to cross examine one's accuser and witnesses who provide evidence and testimony in administrative and disciplinary proceedings. See Maryland State Police v. Zeigler, 330 Md. 540 (1993), In re White, 458 Md. 60 (2018), Chesapeake Bay Found., Inc. v. DCS Dutchship Island, LLC, 439 Md. 588 (2014). Given the wide-reaching scope of this legal principle's application  administrative proceedings across the State of Maryland, it serves to reason that the Title IX context presented here be treated no differently.

Even if the Cardona decision is meritorious, and I assert it is not, it still is not binding in the State of Maryland. In fact, the caselaw in Maryland and the Fourth Circuit stands in a 180 degree posture to Cardona's central holding. Any testimony made by, statement given, or evidence gathered from, a witness that does not appear at the hearing to voluntarily testify and submit to cross-examination should not be considered when rendering a decision on whether a policy violation has been proven by a preponderance of the evidence. Any other conclusion would run afoul of the serious constitutional

concerns implicated by restriction on cross-examination that the Fourth Circuit cared so deeply about in Doe and that Maryland has safeguarded for decades."

Hearing Officer Potter chose to deliberately follow a non-Fourth-Circuit district court decision instead of the binding law of the Fourth Circuit.

—

(3) Inclusion of Jane Does 2, 3, and 4's Allegations and Their Formal Complaint in the Final Investigative Report

As Plaintiff mentioned, the Final Investigative Report for Jane Doe 1's hearing and proceedings. The cover page of the report is omitted because it contains the identity of the complainants and witnesses) included the statements and allegations made by the other accusers and includes the formal complaint filed by all four accusers as its first attachment, three exhibits before the amended complaint that Potter was actually hired to adjudicate. The prejudicial effects of this are severe because it allows for, and almost encourages, an inference of criminality and liaibility based on allegations wholly discrete from those of Jane Doe 1, something the Title IX regulations, UMD's Policy and Procedure, and Alyssa McGinn's earlier ruling all forbid. Plaintiff raised that issue to Ms. Potter and Ms. Nastase in a letter that is reproduced verbatim below. UMD and Potter did nothing to remedy the inclusion of that information in the report and its exhibits.

—

"Second, I am concerned that the very first entry of the Appendices in this case is the very same complaint that was originally filed by the four complainants. The reproduction of that complaint so centrally, paired with the fact that the only alterations between reports after severance was a simple relabeling of complainants as witnesses, creates a situation where the cases are, for all practical purposes, still consolidated.

I understand that you are already in possession of the Appendices and Final Report, and may have already reviewed the consolidated complaint, but I ask that you do not give it any consideration when making a determination of my liability or lack thereof. I know this assertion may be self-evident, but I submit that the only complaint of relevance that should be reviewed when reaching your ultimate finding should be the formal complaint that names only [Jane Doe 1] as a complainant. Any other outcome would be fundamentally unfair."

—

(4) Refusal to Adjourn the Heaing to Allow Conversation with the Title IX Director

Upon ruling that it was outside her jurisdiction to rule on the procedural issues raised, in direct contravention of the Title IX Director's instruction to raise the issues with ther hearing officer instead of her, Plaintiff asked for a brief adjournment of the hearing (something contemplated by the 2020 Regulations at 34 C.F.R. § 106.45(b)(1)(v)) to discuss the issues with the Title IX Director. Hearing Officer Potter denied that request and carried on with the proceeding.

Importantly, a Party in a Title IX proceeding is entitled to an advisor AND a support person at the live hearing, both of which may be, but need not necessarily be, an attorney. Because the procedural errors necessitated this emergency filing, Plaintiff was denied the oppportunity to have his support person present at the hearing because he was forced to pen the instant request for a TRO. To be clear, Ronald Schwartz and Wayne Arminavage II are both attornies, Schwartz as advisor and Arminavage as support person. (This Complaint is filed by attorney Schwartz because Arminavage was only sworn into the bar of this Court last Friday and has not been granted e-filing access yet.)The practical upshot of losing the

support person because the instant lawsuit needed to be written served a patent injustice on the Plaintiff.

5) Investigator Bias

Plaintiff raised the issue that one of the investigators assigned to the case, who was responsible for gathering evidence and writing the investigative reports, Jamie Brennan was impermissibly biased in favor of women. Brennan was sued in her capacity as Title IX investigator after she posted on the internet that women were superior to men and always have been. In response to this request, they removed Ms. Brennan as investigator notwithstanding that she helped author the three individual reports and did nothing to cure the bias dripping from the final investigative report's language and presentation of evidence

## IV. Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

Jane Doe 1 hearing is ongoing as this is filed. Once filed with the Court, Plaintiff will once again ask that the hearing be adjourned while the court reviews the instant request.

Plaintiff's due process rights under the 2020 Regulations, the Fourth Circuit's ruling in Doe v. North Carolina School Systems, and Maryland caselaw (detailed above) have been imperiled in that UMD is proceeding to the live hearing in which his innocence is tested despite doing nothing to remedy the procedural violations raised both to the Hearing Officer and the Title IX coordinator.

Irreperable injury is iminent and ongoing because he is (1) being forced to proceed under three charges, two of which are extra-jurisidictional charges (each carrying its own standard for liability) instead of the one allowable charge under the University's Policy and Procedure and the 2020 Regulations; (2) being forced to proceed with the final investigative report and its appendicies of exhibits featuring the detailed and unabridged allegations of the three other accusers; (3) being forced to proceed with a final investigatived report authored and compiled, at least in part, by an investigator with demonstrated sex and gender based bias; (4) effectively being precluded from having a support person present at the hearing because the instant lawsuit was necessitated by the Hearing Officer's rulings; and (5) injured by the Hearing Officer's refusal to allow for a brief adjournment of the hearing to discuss the allegations with Title IX Director Nastase. (Important to note for purposes of showing exhaustion of remedies, Plaintiff immediately emailed the Title IX director his concerns at the outset of the hearing after learning of the Hearing Officer's rulings and she has not responded at the time of filing)

Money damages do not suffice to cure the injury that is ongoing at this moment. A finding of liability could result in sanctions up to and including expulsion from the university. The 2020 Regulations provide a calibrated toolkit of due process protections afforded to parties in Title IX proceedings so that the weighty possible sanctions cannot be imposed arbitrarily or unfairly. While the 2020 Regulations contemplate the potential for money damages after a proceeding has ended, they also allow for equitable and injunctive relief to secure meaningful and substantive application of the due process protections enshrined in the regulations. Money damages after the fact do nothing to provide him the due process protections that will help him clear his name and demonstrate his innocence. The university's response—doing absolutely nothing and forcing the proceedings onward—is clearly unreasonable in light of the circumstances known to the University and, as such, amounts to unlawful deliberate indifference, a form of Title IX-based discrimination forbidden by law.

UMD has the power and obligation to safeguard Plaintiff's due process rights under Title IX of the Education Amendments Act of 1972, the 2020 Regulations allowing enforcement of same, the United States Constitution, the Maryland Declaration of Rights, the university's Policy and Procedures. UMD has direct and actual knowledge of these procedural due process failures and has chosen to do nothing, forcing Plaintiff into an adjudicatory proceeding plainly in violation of the law. His constitutional rights are imperiled at the potential cost of his entire educational future and litigation for damages at law would not fully restore Plaintiff's right to an education free from sex and gender-based discrimination without unfairly freezing his educational future. Plaintiff is presumed innocent until a finding of liability is made by the hearing officer by a preponderance of the evidence. Making him wait until he is adjudicated liable as a result of proceedings containing multiple constitutional, statutory, and regulatory violations of due process rights is at odds with basic notions of fundamental fairness and his protected property interest in his education at a public institution.

Plaintiff respectfully requests this Court exercise its equitable authority and issue a temporary restraining order enjoining the Title IX proceedings to preserve the status quo ante while it can adjudicate the appropriateness of a preliminary and permanent injunction enjoining the Plaintiff's Title IX Proceedings until the University abides by the 2020 Regulations, Doe v. North Carolina School Systems, Maryland caselaw, the US Constitution, and the Maryland Declaration of Rights. If given the chance, Plaintiff will brief the issues more thoroughly with reference to more specific legal authority.

Plaintiff apologizes if the foregoing complaint contains spelling or gramatical errors, as it is being drafted as quickly as possible to lessen the extent of harm caused by the university's mandate that the hearing proceed despite the due process violations challenged herein.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiff respectfully requests the issuance of a Temporary Restraining Order that enjoins the current ongoing hearing and the other two hearings scheduled.

He also respectfully requests a preliminary and permanent injunction enjoining UMD from continuing the adjudication with so many of his rights circumscribed or precluded all together. If the proceedings are temporarily enjoined by this Court, Plaintiff will obviously fully brief the issues and the applicable law in a memorandum supporting his request for a preliminary injunction.

Plaintiff is not requesting monetary damages at this time but may amend to do so in the future upon disposition of his equitable prayers for relief above.

Plaintiff alerted both the Hearing Officer and the Title IX Coordinator that he would be filing the instant request for a TRO upon denial of his procedural requests.

Plaintiff is filing the complaint in this form because time is of the essence. He will file an amended complaint that is properly formatted and with paragraph numbers as soon as practible.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____

Signature of Plaintiff    _____
Printed Name of Plaintiff    _____

**B.** **For Attorneys**

| | |
|---|---|
| Date of signing: | 09/30/2025 |
| Signature of Attorney | /s/ Ronald L. Schwartz |
| Printed Name of Attorney | Ronald L. Schwartz, Esq. |
| Bar Number | |
| Name of Law Firm | Law Offices of Ronald L. Schwartz |
| Street Address | 4907 Niagara Rd., Suite 103 |
| State and Zip Code | College Park, MD 20740 |
| Telephone Number | 301-474-2300 (office), 301-466-6777 (cell) |
| E-mail Address | ronaldschwartz@verizon.net, waynearminavageii@gmail.com |