IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN DOE, | * |
| Plaintiff, | * |
| v. | * Civil Case No.: SAG-25-03239 |
| BOARD OF REGENTS OF UNIVERSITY SYSTEM OF MARYLAND, | * |
| Defendant. | * |

**MEMORANDUM OPINION**

John Doe, Plaintiff, filed a "Complaint and Request for Injunction" against the Board of Regents of University System of Maryland ("Defendant" or "UMD"). ECF 1.[1] The title of the filing notwithstanding, Plaintiff has specifically requested that this Court issue a temporary restraining order to enjoin disciplinary proceedings in which the Parties are engaged. ECF 1 at 14.[2] UMD filed an opposition. ECF 6. This Court has reviewed the briefings, and has determined that

---

[1] Plaintiff filed his Complaint using a *pro se* form available in this Court; however, the Complaint reflects that it was prepared by counsel. ECF 1 at 15.

[2] Plaintiff also requests that this Court enter preliminary and permanent injunctions to enjoin UMD from continuing to conduct the disciplinary hearings. ECF 1 at 14. Because this Court concludes that Plaintiff has not shown the requisite elements to warrant a temporary restraining order, and Plaintiff did not brief his other requests, the Court will not reach them at this stage. *See* ECF 1 at 14 ("If the proceedings are temporarily enjoined by this Court, Plaintiff will obviously fully brief the issues and the applicable law in a memorandum supporting his request for a preliminary injunction.").

no hearing is necessary. *See* Fed. R. Civ. P. 78(b); Loc. R. 105.6 (D. Md. 2025).[3] For the reasons explained below, Plaintiff's request for a temporary restraining order will be DENIED.

I.      **FACTUAL BACKGROUND**

The Court will derive the pre-filing facts from the Complaint and presume them to be true for purposes of resolving this motion.[4]

On August 26, 2024, four Jane Roe plaintiffs filed, together, a formal complaint alleging three discrete and distinct instances, over the course of a year, of sexual misconduct by Plaintiff, each occurring away from UMD's campus and not as part of an educational program or activity. ECF 1 at 6, 7, 8. UMD, through its Office of Civil Rights and Sexual Misconduct and pursuant to its Policy and Procedures (which UMD enacted to ensure compliance with recently promulgated federal regulations), initiated an investigation of the complaint and charged Plaintiff with three

---

[3] According to a well-respected treatise, "[w]hen the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed. September 2025 Update). This Court has previously recognized that Rule 78(b) provides for, and Rule 65 does not explicitly restrict, a court's discretion to determine a preliminary injunction motion on briefs, without oral hearings. *See Fundamental Admin. Servs., LLC v. Anderson*, No. CIV. JKB-13-1708, 2015 WL 2340831, at *1 (D. Md. May 13, 2015) (citing 11A Wright & Miller's Federal Practice & Procedure § 2949, at 246–48 (2013); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.")). "A hearing for a preliminary injunction 'is not required when no disputes of fact exist and the denial of the motion is based upon the parties' written papers.'" *Gibson v. Frederick Cnty.*, No. SAG-22-1642, 2022 WL 17068095, at *2 (D. Md. Nov. 16, 2022) (quoting *Fundamental Admin. Servs., LLC*). In the instant case, and as discussed, *infra*, the parties' written submissions do not raise a question of fact that must be resolved before the Court may rule on Plaintiff's request. Thus, no hearing is required.

[4] The Complaint is not organized by paragraph; Plaintiff stated he was "filing the complaint in this form because time is of the essence. He will file an amended complaint that is properly formatted and with paragraph numbers as soon as practible [sic]." ECF 1 at 14. Thus, the Court will cite to the page numbers of the Complaint.

offenses: (1) Sexual Assault—Fondling; (2) Sexual Harassment Hostile Environment; and (3) Other Sex-Based Offenses. *Id.* at 6, 8.

UMD initially proceeded with a consolidated investigation of the multiple claims, promulgated preliminary and final investigative reports pursuant to its Policy and Procedures, and prepared for a single hearing, with Alyssa McGinn, Esq., presiding, in which all claims would be tried at once. *Id.* at 7. Plaintiff, after reviewing the final investigative report, requested that the proceedings be severed. *Id.* At UMD's direction, he submitted a letter request to McGinn, and McGinn subsequently severed the proceedings into three[5] formal processes, directing that the original consolidated investigative report be re-written based on separate investigations to allow for each complainant's allegations to be reviewed in isolation, and that three hearings be conducted by separate officers. *Id.* At some point during these severed proceedings (the Complaint does not identify exactly when), Plaintiff raised the issue that Jamie Brennan, an investigator assigned to the case who helped author the individual reports, was "impermissibly biased in favor of women"; after Brennan was sued in her capacity as a Title IX investigator in response to her online activity, she was removed from Plaintiff's case. *Id.* at 12. Ultimately, while UMD issued three individual reports, it kept the narratives of all complainants in each of those reports, but with those complainants re-characterized as "witnesses." *Id.* In addition, the original consolidated formal complaint was included as the first exhibit to the reports. *Id.* at 7.

UMD assigned Jane Potter, Esq., to preside over the first of the severed hearings ("Hearing 1"). *Id.* Following UMD's direction to raise any concerns with the hearing officer, directly, Plaintiff submitted a letter to Potter raising multiple procedural concerns; Plaintiff also raised them with UMD's Title IX Coordinator, Angela Nastase, Esq. *Id.* at 7, 8–11. Those concerns (as

---

[5] Two of the complainants alleged conduct from the same night.

discussed in Plaintiff's letters to Potter and Nastase, full excerpts of which Plaintiff purports to reproduce verbatim in his Complaint) included:

(1) UMD having charged Plaintiff with what Plaintiff characterized as "wholly Title IX-based offenses"—(1) Sexual Assault—Fondling, and (2) Sexual Harassment Hostile Environment—for alleged off-campus conduct outside the scope of an educational program or activity that could only be sanctioned as "Other Sexual Misconduct" under UMD's Policy and Procedures, not Title IX. *Id.* at 7–9. Plaintiff sought dismissal of the Title IX-based offenses. *Id.* at 9.

(2) The hearing officer's consideration of statements from "witnesses"—the other complainants whom UMD had relabeled—not submitting to cross-examination. *Id.* at 9–10.

(3) The inclusion of the allegations of other accusers, in the form of the original joint formal complaint, as the first exhibit appended to each of the three investigative reports. *Id.* at 11. Plaintiff requested that the hearing officer not consider the consolidated complaint, and only consider the severed complaint, when determining liability. *Id.*

Hearing 1 occurred on September 30, 2025. At the start of the hearing, Potter informed Plaintiff that it was not her purview to dismiss any of the charges or rule on any of the procedural issues Plaintiff had raised to her.[6] *Id.* at 7, 9. Plaintiff then requested that the hearing be paused so he could raise the issues to Nastase; Potter denied this request. *Id.* at 7. Plaintiff had alerted both

---

[6] The Complaint also alleges that Potter, in response to Plaintiff's concerns about cross-examination of witnesses, "ruled that she would only call two witnesses and would consider the statements made by the other accusers in their entirety notwithstanding Plaintiff's lack of ability to cross-examine them . . . ." ECF 1 at 9. The Complaint does not, however, identify when or in what context Potter made this ruling, though Plaintiff's allegation that he detailed his argument on the issue "in his procedural concerns letter" to Potter would suggest that the ruling occurred prior to the hearing. *Id.* at 9.

4

Potter and Nastase that he would be filing a request for a temporary restraining order upon denial of his procedural requests. *Id.* at 14. While Hearing 1 was occurring, Plaintiff filed his Complaint and Request for Injunction with this Court. *Id.* at 13. Plaintiff has stated that once his Complaint was filed with this Court, he would once again ask that Hearing 1 be adjourned while this Court reviewed his request for a temporary restraining order. *Id.*

Since Plaintiff filed his Complaint, certain relevant events have transpired; the Court derives facts pertaining to those events from Defendant's Opposition. ECF 6. According to Defendant, Hearing 1 has concluded but there has, as of yet, been no disciplinary finding nor imposition of any sanction against Plaintiff. ECF 6 at 6–7. The other two hearings are scheduled for October 8, 2025, and October 23, 2025. ECF 6-1 at ¶ 10.

## II.   LEGAL STANDARD

"The standard for a temporary restraining order is the same as a preliminary injunction." *Maags Auditorium v. Prince George's Cnty.*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017). A temporary restraining order ("TRO") or a preliminary injunction is warranted when the movant demonstrates that (1) the movant is likely to succeed on the merits, (2) the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities favors preliminary relief, and (4) injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant must establish all four elements in order to prevail. *Accident, Inj. and Rehab., PC v. Azar*, 943 F.3d 195, 201 (4th Cir. 2019); *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 544 (4th Cir. 2023) ("[A] preliminary injunction can be granted only if every factor is met[,] . . . [y]et *denying* a preliminary injunction only takes the rejection of a single factor.").

A temporary restraining order, much like a preliminary injunction, affords "'an extraordinary and drastic remedy' prior to trial." *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, No. SAG-18-2315, 2019 WL 2642838, at *6 (D. Md. June 27, 2019) (quoting *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating preliminary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances.") (citation omitted).

## III. ANALYSIS

### A. Likelihood of Success on the Merits

A party seeking preliminary relief must establish that they are likely to succeed on the merits. "Although Plaintiff[] 'need not establish a certainty of success,' they must 'make a clear showing that [they are] likely to succeed at trial.'" *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) (quoting *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (internal quotation marks omitted) (alteration in *Roe*)). Plaintiff has alleged that UMD's response to his concerns regarding certain procedural issues in the disciplinary process—which he alleges constituted due process violations— "amount[s] to deliberate indifference" to those concerns, which Plaintiff alleges constitutes Title IX discrimination on the basis of sex. ECF 1 at 7. This Court will address Plaintiff's allegations regarding violations of Title IX and his due process rights in turn.

#### 1. "Deliberate Indifference" in Violation of Title IX

Title IX of the Education Amendments of 1972 provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff advances an apparent Title IX claim of impermissible discrimination

under a theory of "deliberate indifference." ECF 1 at 7, 13. As an initial matter, this Court notes that to advance a "deliberate indifference" theory of discrimination to challenge the conduct of disciplinary proceedings is unusual. The Fourth Circuit has acknowledged—without adopting— the Second Circuit's holding in *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) that "'[p]laintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories,' erroneous outcome and selective enforcement." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021) (quoting *Yusuf*).[7] As Defendant notes, however, Plaintiff could not advance his Title IX claim under either of these theories because "there has been no enforcement or outcome yet for him to challenge." ECF 6 at 9. Thus, Plaintiff alleges that UMD's "response—doing absolutely nothing and forcing the proceedings onward—is clearly unreasonable in light of the circumstances known to the University and, as such, amounts to unlawful deliberate indifference, a form of Title IX-based discrimination forbidden by law." ECF 1 at 13.

Plaintiff's Title IX discrimination claim is not likely to succeed, as his invocation of the "deliberate indifference" standard is misplaced. Contrary to Plaintiff's suggestion that this theory of liability may apply to a school's response upon learning of and investigating *any* "potential discrimination based on sex," *see* ECF 1 at 6, courts presented with the question have consistently held application of the "deliberate indifference" theory to be restricted to evaluation of a school's response to complaints of *sexual harassment*, specifically. An overwhelming weight of authority

---

[7] The Fourth Circuit recognized the Second Circuit's approach as representing one side of a circuit split, with other federal Courts of Appeals rejecting *Yusuf*'s "doctrinal framework for student disciplinary proceedings" and instead employing a simpler standard "that more closely tracks the text of Title IX." *Sheppard*, 993 F.3d at 235–36. The Fourth Circuit, with the disclaimer that it "find[s] no inherent problems with the erroneous outcome and selective enforcement theories identified in *Yusuf*," adopted the latter approach. *Id.*

captures courts' general skepticism that a Title IX "deliberate indifference" claim applies in any other context.[8] *See, e.g., Doe v. Baum*, 903 F.3d 575, 588 (6th Cir. 2018) ("The deliberate-indifference theory was designed for plaintiffs alleging sexual harassment. . . . [T]o plead a Title IX deliberate-indifference claim, the misconduct alleged must be sexual harassment, not just a biased disciplinary process."); *Borkowski v. Balt. Cnty.*, 492 F. Supp. 3d 454, 486 (D. Md. 2020) (recognizing some circuits use of formal doctrinal tests in assessing Title IX claims in context of campus disciplinary proceedings, and citing *Baum* for proposition that "deliberate indifference" theory is confined to allegations of sexual harassment); *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 664 (D. Conn. 2019) ("Plaintiff identifies no authority for his proposition that a school can be held liable under a Title IX deliberate indifference theory for flaws in the school's own disciplinary process towards a student as a *respondent*, as opposed to a school's failure to take corrective action with respect to harassment suffered by a student as a *complainant*.") (emphasis in original); Amy R. LaMendola, Annotation, *School's or School Official's Liability for Unfair*

---

[8] Plaintiff cites Title IX regulations promulgated in 2020 for the proposition that the "deliberate indifference" standard has broader application. In April 2024, the U.S. Department of Education released a Final Rule under Title IX that revised portions of the Title IX regulations (including by removing the "deliberate indifference" standard from 34 C.F.R. § 106.44); however, the Final Rule was vacated in its entirety in January 2025, *see Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. 2025), *as amended* (Jan. 10, 2025); thus, the 2020 Title IX Rule is now back in effect. The 2020 regulations, however, did *not* expand application of the "deliberate indifference" standard to a school's response to any "potential discrimination based on sex"; instead, they identified the standard as the liability standard for evaluating the sufficiency of the school's response *to sexual harassment*. *See* 34 C.F.R. § 106.44 ("Recipient's response to sexual harassment") ("A recipient with actual knowledge of sexual harassment . . . must respond promptly in a manner that is not deliberately indifferent."); Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026 (May 19, 2020) (to be codified at 34 C.F.R. pt. 106) (referring throughout to the "deliberate indifference" standard in discussion of recipient's response to sexual harassment). Plaintiff, in fact, concedes this point in his Complaint, stating, "Importantly for the immediate case, '[t]hese final regulations impose specific requirements on recipients [of federal funding under Title IX] *responding to sexual harassment* . . . .'" ECF 1 at 6 (quoting 85 Fed. Reg. 30046) (emphasis added).

*Disciplinary Action Against Student Accused of Sexual Harassment or Assault*, 34 A.L.R. 7th Art. 1 (originally published in 2017, updated weekly per Westlaw) (noting a single Southern District of Ohio case as "the only case in which a deliberate indifference claim has been allowed to proceed to challenge unfair disciplinary proceedings and action absent a showing of 'classic' sexual harassment."). Here, Plaintiff has not alleged any facts suggesting that he was sexually harassed, let alone that UMD was deliberately indifferent to such harassment. Thus, Plaintiff's Title IX claim is not likely to succeed on the merits.[9]

### 2. Procedural Due Process Violations

Plaintiff has not specifically pleaded the vehicle for his due process arguments, alleging only that "[c]onstitutional procedural due process rights are . . . relevant to resolution of the issue presented," ECF 1 at 3, and making repeated reference to his due process rights having been violated or "imperiled." *Id.* at 7, 13. On this, a request for injunctive relief brought by plaintiff with counsel, the Court is reluctant to overlook this defect in pleading, and the Court could conclude, as Defendant suggests, ECF 6 at 12, that the Complaint has failed to directly state a cognizable legal cause of action. *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution."). However, the Court will presume that Plaintiff intended for his due process arguments to form a claim under 42 U.S.C. § 1983 for deprivation of due process rights under the Fourteenth

---

[9] Defendant, in its Opposition, treats Plaintiff's allegations regarding the bias of one of the investigators originally assigned to his case, Jamie Brennan, as suggesting a Title IX discrimination claim based on gender bias. *See* ECF 6 at 10–12. However, Plaintiff does not appear to raise the issue of the investigator's alleged bias for purposes of a Title IX discrimination claim; rather, he cites the alleged bias among the list of "errors in procedure" that he allegedly raised with UMD, *Id.* at 7, 12, and later among the "procedural violations" that he alleges "imperiled" his due process rights. *Id.* at 13. This Court declines to raise a claim not pleaded by Plaintiff.

9

Amendment to the U.S. Constitution.[10] *Id.* ("[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

Defendant argues that, pursuant to the Eleventh Amendment, it has sovereign immunity against Plaintiff's due process claims. ECF 6 at 13–14. "'Eleventh Amendment immunity' . . . [is] a common (though somewhat inaccurate) shorthand for the federal-law doctrine that protects non-consenting States from suit in federal court." *Glob. Innovative Concepts, LLC v. Florida*, 105 F.4th 139, 144 (4th Cir. 2024). "This immunity 'also extends to state agencies and other governmental entities that can be viewed as arms of the state.'" *Doe v. Univ. of N.C. Sys.*, 133 F.4th 305, 313 (4th Cir. 2025) (quoting *Singleton v. Md. Tech & Dev. Corp.*, 103 F.4th 1042, 1047 (4th Cir. 2024)) (internal quotations omitted).[11]

---

[10] The Court recognizes that, in the previous footnote, it declined to presume a distinct "gender bias" Title IX claim from Plaintiff's complaint; however, its presumption as to the § 1983 due process claim is distinguishable in that § 1983 is the *sole* vehicle by which Plaintiff could possibly bring his constitutional due process claims. As in, while raising a "gender bias" claim not directly pleaded by Plaintiff would require this Court to go further in speculating what *could be*, presuming the § 1983 claim merely recognizes what *can only be*.

[11] The facts of *University of North Carolina System* bear some similarity to those of the instant case (a student at a state university sued the university, among others, for, *inter alia*, deprivations of his due process rights under the Fourteenth Amendment and violations of his rights under Title IX in the conducting of disciplinary hearings for sexual misconduct). However, the cases differ in some respects as well (for example, in *University of North Carolina System*, plaintiff's claims were evaluated in the context of a motion to dismiss, not a request for preliminary relief). One distinction worth specific mention is that, in *University of North Carolina System*, the university had found the plaintiff responsible for sexual misconduct and expelled him, and plaintiff had subsequently "exhausted his university remedies," having appealed the decisions from the disciplinary hearings first to university appeals officers and then to the school's Board of Trustees before filing his lawsuit in federal district court. 133 F.4th 305, 312 (4th Cir. 2025). Here, Plaintiff has sought a TRO from this Court not only before exhausting his "university remedies," but before the initial disciplinary hearings have been completed and any rulings rendered.

While not raised by Defendant, this Court notes that the timing of Plaintiff's request potentially implicates the abstention doctrine defined by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971). Absent a few exceptions, *Younger* abstention requires a federal court to abstain from interfering in state criminal proceedings and certain civil proceedings akin to criminal prosecutions, if there is: "(1) an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests;

"Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). *See also Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) ("[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.") (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). The Fourth Circuit has acknowledged that, in assessing the "likelihood of success on the merits" factor of the preliminary relief inquiry, that "[b]ecause the 'merits' of a case are often contrasted with 'jurisdictional' issues, . . . *Winter* could be taken to imply that we do not consider jurisdictional issues in the first factor." *Am. Fed'n of Tchrs v. Bessent*, — F.4th —, No. 25-1282, 2025 WL 2313244, at *2 n.3 (4th Cir. Aug. 12, 2025). However, the court emphasized that "the 'likelihood of success on the merits' refers to the party's likelihood of success *in the lawsuit before the court*, including both merits *and* jurisdictional issues. . . . So jurisdictional issues . . . can be considered as part of the first *Winter* factor." *Id.* (emphasis in original).

State regulations governing Defendant expressly recognize its sovereign immunity. Md. Code Ann., Educ. §§ 12-104(i)(4) (in subsection providing for waiver of immunity with respect to claims or actions brought under the Maryland Tort Claims Act, stating, "Nothing in this subsection shall be construed to waive or abrogate the immunity of the University System of Maryland under the Eleventh Amendment to the United States Constitution."). Accordingly, Maryland state courts

---

and (3) provides an adequate opportunity to raise constitutional challenges." *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006). *Younger* expresses the "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." 401 U.S. at 41. Without deciding the issue, as it was not raised by Defendant, this Court nevertheless notes that *Younger* abstention has been invoked by other courts when faced with circumstances similar to the instant case. *See, e.g., Doe v. Univ. of Ky.*, 860 F.3d 365 (6th Cir. 2017) (affirming district court's finding that *Younger* abstention doctrine applied to student's lawsuit brought between second and third sexual misconduct disciplinary hearings initiated by a public university).

have confirmed, "There is no doubt . . . that the Board is considered to be an arm of the State Government for the purposes of asserting the defense of sovereign immunity." *Stern v. Bd. of Regents, Univ. Sys. of Md.*, 846 A.2d 996, 1002 (Md. 2004).[12]

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. Mar. 30, 2022):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

*Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d at 409 (cleaned up) (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 248 (4th Cir. 2012)). Regarding the third exception, "a court may find that a state has waived its Eleventh Amendment immunity 'only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.'" *Pevia v. Hogan*, 443 F. Supp. 3d 612, 631–32 (D. Md. 2020) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 254 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996) (internal quotation marks and alteration omitted)).

None of the above exceptions to sovereign immunity are applicable here. "Congress has not abrogated sovereign immunity for § 1983 suits." *Biggs v. N. Carolina Dep't of Pub. Safety*,

---

[12] The Fourth Circuit has also previously determined that the University of Maryland is an "alter ego" of the State of Maryland (though in the context of determining diversity jurisdiction where the university was the plaintiff). *See Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255 (4th Cir. 2005).

953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); *see also Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 611 n.16 (D. Md. 2016), *aff'd*, 685 F. App'x 261 (4th Cir. 2017) ("§ 1983 claims are *never* cognizable against states, state agencies, or state agents acting in their official capacities, regardless [of] whether the defendant state has waived Eleventh Amendment immunity.") (emphasis in original). The second exception is also inapplicable, as Plaintiff only seeks the TRO against UMD, not any individual state official. Finally, Maryland has not waived UMD's sovereign immunity to suit in federal court. With none of the exceptions to UMD's sovereign immunity applicable here, sovereign immunity precludes any chance of Plaintiff succeeding on the merits of his due process claim. Having reached that conclusion on the jurisdictional basis, this Court need not engage in the additional analysis of the constitutional adequacy of Defendant's Policy and Procedures as applied in this case.[13]

As analyzed above, Plaintiff has not established a likelihood of success on the merits of his claims. That conclusion is, by itself, sufficient grounds for this Court to deny Plaintiff's request for preliminary relief. *See Frazier*, 86 F.4th at 544 ("[A] district court denying a preliminary injunction may satisfy Rule 52(a)(2) by stating the facts and legal conclusions about a single factor."); *N. Va. Hemp and Agriculture, LLC v. Virginia*, 125 F.4th 472, 497 (4th Cir. 2025) ("Given our resolution of the plaintiffs' likelihood of success on the merits, we need not reach the remaining factors . . . ."). However, this Court believes it worth noting that Plaintiff's request for a TRO would also fail for want of demonstrating irreparable harm.

---

[13] While Defendant has briefed the issue in its Opposition, *see* ECF 6 at 14–20, this Court is reluctant to opine on the adequacy of Defendant's specific procedures in light of the current procedural posture of the underlying disciplinary hearings (see mention of *Younger* in n.12, *supra*).

B. **Irreparable Harm**

To establish irreparable harm, a plaintiff "must make a 'clear showing' that the plaintiff will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952, F.2d 802, 812 (4th Cir. 1991)). In his Complaint, Plaintiff alleges as "irreparable injur[ies]": (1) the impact that a finding of liability will have on his reputation and his educational future; and (2) the current injury he is suffering by "being forced" to proceed with his disciplinary hearings despite UMD not remedying his numerous procedural concerns, which he characterizes as due process violations. ECF 1 at 13.

First, Plaintiff's allegations that "[a] finding of liability" at his disciplinary hearings "could result in sanctions up to and including expulsion from the university," and could cost him "his entire educational future," *Id.* at 13, are entirely speculative at this juncture, as no decision has been reached in any hearings. Despite Plaintiff's own perceptible assumptions about the hearing officer's ultimate ruling, this Court cannot consider such speculative harm as part of its TRO analysis. Issuing a TRO "based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a 'clear showing' that the plaintiff is entitled to relief." *Di Biase*, 872 F.3d at 230 (quoting *Winter*, 555 U.S. at 22) (emphasis added).

Plaintiff also alleges he is suffering "iminent [sic] and ongoing" irreparable injury in the form of the procedural issues he claims violate his due process rights.[14] Implicitly invoking the

---

[14] Under the heading of "Irreparable Injury" in his Complaint, Plaintiff lists five procedural issues, including his (1) "being forced to proceed under three charges, two of which are extra-jurisdictional charges (each carrying its own standard for liability) instead of the one allowable charge under the University's Policy and Procedure and the 2020 Regulations"; (2) "being forced to proceed" with the final investigative report for each hearing continuing to include allegations of

14

proposition that, generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate," *Coreas v. Bounds*, 451 F. Supp. 3d 407, 428 (D. Md. Apr. 3, 2020), Plaintiff argues that "[m]oney damages after the fact do nothing to provide him the due process protections that will help him clear his name and demonstrate his innocence." ECF 1 at 13.

First, this Court notes that Plaintiff's allegations of due process violations are, to an extent, also speculative. With no decision having yet been reached or sanction imposed in any of the hearings Plaintiff seeks to enjoin, Plaintiff (and this Court) can only speculate as to whether the hearing officer has, in fact, reached its decision based on standards, allegations, and evidence the alleged incorporation of which Plaintiff alleges has violated his due process rights. As just one example, regarding Plaintiff's concerns about the classification of the offenses with which he has been charged, Plaintiff alleges that "refusal to dismiss the extra-jurisdictional charges" allows the hearing officer to "retain[] three definitions from which she may find liability, two of which the 2020 [Title IX] regulations explicitly exclude from consideration with the conduct occurred off campus and not as part of an educational program or activity." ECF 1 at 8. Plaintiff also alleges, however (in a purported excerpt from his letter to Potter and Nastase), that the Notice of Formal Complaint addressed to Plaintiff by UMD expressly acknowledged that "[t]he alleged conduct is not . . . designated as Title IX-based Prohibited Conduct because the alleged conduct did not occur on property owned or controlled by the University nor within an Education Program or Activity. As stated above, the University will address the alleged conduct under the Policy Procedures."

---

all four complainants, even after the severance of proceedings; (3) "being forced to proceed" with a final investigative report to which Brennan, "an investigator with demonstrated sex and gender based bias," partially contributed, *Id.* at 12, 13; (4) being precluded from having a "support person" at Hearing 1 because his "support person" was otherwise occupied with drafting his federal Complaint, *Id.* at 11, 13; and (5) Potter's refusal to allow for a brief adjournment of Hearing 1 for Plaintiff to talk to Nastase. *Id.* at 13.

ECF 1 at 8. This is confirmed by the copy of the Notice of Formal Complaint attached to Defendant's Opposition. ECF 6-3, at 4. Thus, it is currently unclear if the hearing officers have made or will make reference to the definitions Plaintiff challenges. The "imminent [sic] and ongoing" injury he alleges is not yet "actual" harm.

Separately, while Plaintiff did not raise this point in his filing, this Court notes that certain constitutional claims may carry with them a presumption of irreparable harm. The Fourth Circuit has articulated the principle that "the denial of a constitutional right, if denial is established, constitutes irreparable harm for purposes of equitable jurisdiction." *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987). Notably, in the context of the preliminary injunction inquiry, courts have stated that "'a plaintiff's claimed irreparable harm is inseparably linked' to the likelihood of success on the merits." *Willey v. Brown*, Civil No. 23-2299-BAH, 2024 WL 3557937, at *12 (D. Md. July 25, 2024) (slip op.) (quoting *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009)) (internal quotation marks omitted). In *Miranda v. Garland*, the Fourth Circuit analyzed a lower court's grant of a preliminary injunction in a case involving procedural due process claims; specifically, a plaintiff's claims that the process employed by the government in a bond hearing under § 1226(a) of the Immigration and Nationality Act violated the Constitution's Due Process Clause. 34 F.4th 338 (4th Cir. 2022). The court, after concluding that the plaintiff had failed to show a likelihood of success on his due process claims, held that he had also failed to show irreparable harm. While acknowledging that "a deprivation of a constitutional right, 'for even minimal periods of time, unquestionably constitutes irreparable injury,'" the court stated that plaintiff had failed to "demonstrate[] a likelihood of success on his claim that he was denied due process during his bond hearing. Without his alleged constitutional injury, [plaintiff] has failed to show that he will suffer irreparable harm." 34 F.4th at 365 (quoting

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)).[15] Thus, where, as here, a plaintiff has not demonstrated a likelihood of success on his constitutional claims, including due process claims, there is no presumption of irreparable harm.

## IV.   CONCLUSION

Defendant has argued that the other factors in the TRO inquiry—the balance of the equities and the public interest in the injunctive relief—also weigh against granting Plaintiff's request. Because we conclude that Plaintiff has not demonstrated a likelihood of success on the merits (and can only speculate as to his "irreparable injury"), this Court need not reach the other two factors. For the reasons set forth above, Plaintiff's request for a temporary restraining order, contained within ECF 1, is DENIED. A separate Order follows.

Dated: October 10, 2025                         /s/
                                                Stephanie A. Gallagher
                                                United States District Judge

---

[15] In *Elrod*, the Supreme Court made this statement with specific regard to First Amendment claims: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Despite this original articulation, courts have, as the Fourth Circuit did in *Miranda*, extended the principle to other Constitutional provisions.