IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN DOE, | * |
| Plaintiff, | * |
| v. | * Civil Case No.: SAG-25-03239 |
| ANGELA NASTASE, | * |
| Defendant. | * |

## MEMORANDUM OPINION

On October 19, 2025, Plaintiff, John Doe, filed an "Amended Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction and Requests for Declaratory Judgment (and Rule 57 Request for Speedy Hearing)," ECF 14 (the "Amended Complaint"), as well as a second "Motion for Temporary Restraining Order,"[1] ECF 15, seeking to enjoin ongoing sexual misconduct proceedings at the University of Maryland ("UMD") in which he is a respondent. In his Amended Complaint, Plaintiff has sued Angela Nastase, Defendant, in her official capacity as Director and Title IX Coordinator of the University of Maryland, College Park Office of Civil Rights and Sexual Misconduct ("UMD OCRSM"). Defendant filed an opposition on October 21, 2025. ECF 20. This Court has reviewed the briefings, and has determined that no hearing is necessary. *See* Fed. R. Civ. P. 78(b); Loc. R. 105.6 (D. Md. 2025).[2] For the reasons explained below, Plaintiff's motion for a temporary restraining order will be DENIED.

---

[1] Plaintiff first requested a temporary restraining order in a "Complaint and Request for Injunction," ECF 1, which this Court denied on October 10, 2025. ECF 12, 13.

[2] According to a well-respected treatise, "[w]hen the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special

1

I.      **FACTUAL BACKGROUND**

This Court will derive the facts from the Amended Complaint and presume them to be true for purposes of resolving this motion.

   **A. The University of Maryland's Disciplinary Process**

UMD has promulgated the "University of Maryland Policy and Procedures on Sexual Harassment and Other Sexual Misconduct" (the "UMD Policy" and "UMD Procedures"; collectively, the "UMD Policy and Procedures"), which are informed by Title IX regulations and guidance from the Department of Education. ECF 14 at ¶¶ 8, 13.[3] The UMD Policy and Procedures outline a grievance process for investigating and sanctioning allegations of sexual harassment under Title IX as well as off-campus conduct that has continuing adverse effects on or creates a hostile environment for those on UMD property or in UMD programs or activities, or otherwise threatens the health and/or safety of UMD members. *Id.* at ¶ 10; *id.* at 5 n.2; ECF 14-2 at 4 (UMD Policy §§ IV.A.3–4). This grievance process entails, upon receipt of a Complaint, (1) an evaluation and decision by UMD's Title IX Coordinator as to whether the alleged conduct could constitute a violation of UMD Policy and Procedures; (2) if the Coordinator determines a violation may have

---

requirements." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed. September 2025 Update). This Court has previously recognized that Rule 78(b) provides for, and Rule 65 does not explicitly restrict, a court's discretion to determine a preliminary injunction motion on briefs, without oral hearings. *See Fundamental Admin. Servs., LLC v. Anderson*, No. CIV. JKB-13-1708, 2015 WL 2340831, at *1 (D. Md. May 13, 2015) (citing 11A Wright & Miller's Federal Practice & Procedure § 2949, at 246–48 (2013); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.")). "A hearing for a preliminary injunction 'is not required when no disputes of fact exist and the denial of the motion is based upon the parties' written papers.'" *Gibson v. Frederick Cnty.*, No. SAG-22-1642, 2022 WL 17068095, at *2 (D. Md. Nov. 16, 2022) (quoting *Fundamental Admin. Servs., LLC*). In the instant case, and as discussed, *infra*, the parties' written submissions do not raise a question of fact that must be resolved before the Court may rule on Plaintiff's request. Thus, no hearing is required.

[3] Plaintiff attached the UMD Policy and Procedures to his Amended Complaint. ECF 14-2.

2

occurred, provision of notice to the parties of initiation of the school's grievance process for resolving allegations of sexual misconduct; (3) an impartial investigation (including interviews of the parties and witnesses and the gathering of evidence directly related to the allegations) and production of a report by an independent and unbiased investigator employed by the school; (4) an opportunity for the parties to access and respond, in writing, to the first draft of the report; (5) a live hearing before a "hearing officer" in which an advisor of choice (who can be but need not be an attorney) may cross-examine the opposing party and any witnesses produced by either party; (6) a written determination by the hearing officer as to whether the school has proven, by a preponderance of the evidence, that the respondent committed a policy violation; and (7) the right of either party to appeal the hearing officer's findings. ECF 14 at ¶ 10 (citing UMD Procedures §§ V–VI).

### B. Plaintiff's Disciplinary Proceedings at UMD and Federal Lawsuit

Plaintiff is a current doctoral student at UMD. ECF 14 at ¶ 16. On August 26, 2024, four female students (Complainants 1, 2, 3, and 4) filed a joint formal complaint against Plaintiff, alleging possible violations of Title IX or UMD's internal non-Title IX sexual harassment policy occurring in three different events; the same day, UMD OCRSM sent Plaintiff a "Notice of Investigation" that contained the allegations against him. *Id.* at ¶¶ 17–18.

After UMD initially consolidated the complaints into one proceeding, and after a draft final investigative report was promulgated, Plaintiff contacted Defendant to request the identity of a previously undisclosed witness. *Id.* at ¶¶ 19, 22. Defendant directed Plaintiff to contact the hearing officer regarding his request, direction which Plaintiff alleges Defendant made "despite fully knowing that this wasn't actually the proper procedure." *Id.* at ¶ 22. On May 2, 2025, Plaintiff contacted Defendant and the hearing officer assigned to his case, Ms. Alyssa Rae McGinn, Esq.,

requesting that the complaint be severed and the investigation be reopened. *Id.* at ¶ 22. In response, Ms. McGinn ordered that the complaints be severed into three proceedings, with a new report to be authored for each of the those proceedings, respectively. *Id.* at ¶ 23. UMD OCRSM issued three newly amended notices of investigation for the respective proceedings. *Id.* at ¶ 24.

The three new draft investigative reports were promulgated on June 26, 2025. According to Plaintiff, the only change from the original consolidated report was the renaming of the Complainants as "witnesses" in the reports for which they were not the primary complainant. *Id.* at ¶ 25–26. In addition, the appendices of each report contained the original formal joint complaint and notice of investigation. *Id.* at ¶ 27. On July 17, 2025, Plaintiff contacted Defendant and UMD's general counsel, requesting, among other things, that the reports be amended; however, no such action was taken, and the cases proceeded to hearings. *Id.* at ¶¶ 28–29.

Three hearing notices sent to Plaintiff informed him that UMD would no longer be enforcing provisions of its own Policy and Procedure that prohibited a hearing officer, in reaching a determination regarding responsibility, from relying on any statement by a party or witness who did not answer relevant cross-examination questions. *Id.* at ¶ 31; ECF 14-7 (hearing notices). Each of the hearing notices informed Plaintiff that an adverse determination after the hearing could result in his suspension or expulsion. ECF 14 at ¶ 31. Plaintiff raised concerns about this amendment of UMD's Policy and Procedures, and reiterated his concerns regarding the investigative reports, to Defendant, who again instructed him to raise them with the hearing officer assigned to his first hearing, Ms. Nancy Potter, Esq. *Id.* at ¶ 32. Plaintiff did so on September 23, 2025; however, at the start of the first hearing, on September 30, 2025, Ms. Potter stated it was not in her purview to rule on the issues Plaintiff raised and thus she would not be taking any action to remedy what Plaintiff characterized as "due process violations." *Id.* at ¶¶ 33–34. Ms. Potter referred Plaintiff

4

back to Defendant; however, Ms. Potter denied his request for an adjournment of the hearing to allow him to contact Defendant. *Id.* at ¶ 34. Unable to reach Defendant, Plaintiff filed his original federal complaint and request for a temporary restraining order during the hearing. *Id.* This Court denied Plaintiff's request for a temporary restraining order pursuant to an order and opinion entered on October 10, 2025. ECF 12, 13.

The hearing to adjudicate the complaints of Complainants 2 and 3 was held on October 8, and October 15, 2025. ECF 14 at ¶ 35. Plaintiff submitted a letter to the hearing officer, Kevin O'Leary, Esq., outlining his procedural concerns, and Mr. O'Leary informed Plaintiff that he would make Plaintiff's letter part of the record, before proceeding with the hearing. *Id.*; ECF 14-9 (letter to Mr. O'Leary). During the hearing, Complainants 1 and 4 were called to testify. Mr. O'Leary asked them only when they first learned of the complaints of Complainants 2 and 3; they gave no testimony regarding their own complaints. ECF 14 at ¶¶ 26, 35.[4] Plaintiff's counsel chose not to cross-examine them about their own complaints; with respect to Complainant 1, Plaintiff's counsel declined so as not to give her advance notice of cross-examination at the hearing on her complaint, scheduled for October 23, 2025. *Id.* at ¶¶ 35, 37. Plaintiff has contacted the hearing officer assigned to the third hearing, raising the same procedural concerns. *Id.* at ¶ 36; ECF 14-10 (letter to Mr. Dan Schorr, Esq.). To this point, no decision has been rendered in any of the disciplinary proceedings. ECF 14 at ¶¶ 52, 69.

---

[4] This Court notes that Plaintiff has elaborated, but only in his TRO motion, on the scope of this testimony, stating that "Complainants 1 and 4 testified at the hearing, but only about information they received from Complainants 2 and 3 when the four Complainants got together and decided, jointly, to bring a sexual misconduct complaint against the Plaintiff." ECF 15-1 at 6. In addition, Plaintiff noted, but again only in his TRO motion, that Mr. O'Leary called Complainants 1 and 4 as witnesses after "[h]aving been advised of the current lawsuit." ECF 15-1 at 15.

On October 19, 2025, Plaintiff filed his Amended Complaint and Motion for Temporary Restraining Order ("TRO"), as described above. ECF 14, 15. In his Amended Complaint, Plaintiff brings claims for procedural due process violations under the Fourteenth Amendment to the Constitution pursuant to 42 U.S.C. § 1983, and under the Maryland Declaration of Rights, specifically challenging (1) Defendant's direction to hearing officers "to apply UMD's *ad hoc* amendment of its procedural rules" regarding reliance on statements of witnesses not submitting to cross-examination, which direction Plaintiff claims constitutes an "arbitrary and capricious" deprivation of his due process right to "meaningful cross-examination," and (2) Defendant's failure to follow UMD's procedures by including in each of the final investigative reports allegations from complainants other than the individual complainant who is the subject of each respective report. ECF 14 at ¶¶ 38–69.

Plaintiff has requested a temporary restraining order enjoining Defendant from proceeding with the October 23, 2025 hearing while briefing an action for a preliminary and permanent injunction of the ongoing sexual misconduct proceedings, which Plaintiff also requests. ECF 14 at 22–23, 28–29. Plaintiff has also requested, in the alternative, a declaratory judgment under 28 U.S.C. § 2201 establishing Plaintiff's due process rights in the ongoing sexual misconduct proceedings, ECF 14 at ¶¶ 70–79; *id.* at 33–34. In his TRO motion, Plaintiff requested a TRO and/or preliminary injunction "restraining the Defendant . . . from continuing disciplinary proceedings against the Plaintiff, including an upcoming hearing on October 23, 2025, and issuing adjudicatory findings against the Plaintiff in two hearings conducted in the last 30 days until the due process violations delineated herein are remedied." ECF 15 at 4.

Defendant, in compliance with an order of this Court, ECF 16, filed her response in opposition to Plaintiff's TRO motion on October 21, 2025, in which she argued that (1) the

abstention doctrine derived from *Younger v. Harris* precludes this Court from providing injunctive relief, and (2) that Plaintiff has failed to satisfy the requirements for a temporary restraining order or declaratory judgment. ECF 20. Because this Court finds that, under *Younger*, it must abstain from interfering with the ongoing state proceeding, it does not address Defendant's other arguments.

## II.     YOUNGER ABSTENTION

"[A]bstention is an exception to the general rule that federal courts must decide cases over which they have jurisdiction." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022). Among multiple doctrines of abstention articulated by the Supreme Court, the one relevant to the instant case derives from *Younger v. Harris*, 401 U.S. 37 (1971). "*Younger* . . . and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Between the "[t]wo principles [that] drive the doctrine: equity and comity[,]" "*Younger* itself flags the proper respect for state functions as the 'more vital consideration.' . . . Rightfully so." *Air Evac EMS, Inc.*, 37 F.4th at 95 (quoting *Younger*, 401 U.S. at 44); *see also Simopoulos v. Va. State Bd. of Med.*, 644 F.2d 321, 327–28 (4th Cir. 1981) (describing the Supreme Court's "shift[] from equity, comity and federalism to comity and federalism alone as the rationale for its abstention doctrine," and citing *Moore v. Sims*, 422 U.S. 415, 430 (1979), for the proposition that "the Court . . . emphasiz[ed] that the real premise for *Younger* was comity . . . .").

The Supreme Court has identified three types of pending state proceedings that may present exceptional circumstances warranting *Younger* abstention: (1) "ongoing state criminal prosecutions," (2) "certain 'civil enforcement proceedings,'" and (3) "pending 'civil proceedings

7

involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). These three categories of cases define *Younger*'s scope. *Sprint*, 571 U.S. at 78.

If, and only if, a case falls within these three categories of state proceedings,[5] a federal court must abstain if there is (1) an "ongoing state judicial proceeding," that (2) "implicate[s] important state interests," and (3) provides "an adequate opportunity . . . to raise constitutional challenges." *Middlesex*, 457 U.S. at 432; *see also Sprint*, 571 U.S. at 81 (explaining that the three *Middlesex* conditions are "not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking *Younger*.") (emphasis in original).

Even when all of the above conditions for *Younger* abstention are satisfied; however, "*Younger* identifies three exceptions to the court's duty to abstain: [a showing of] (1) 'bad faith or harassment' by state officials responsible for the prosecution; (2) a [state] statute that is 'flagrantly and patently violative of express constitutional prohibitions'; and (3) other 'extraordinary circumstances' or 'unusual situations.'" *Air Evac EMS, Inc.*, 37 F.4th at 96 (quoting *Younger*, 401 U.S. at 49–54).

At the outset, before undertaking its own analysis of the specific circumstances of the instant case, this Court highlights that multiple courts have found *Younger* abstention to be appropriate in similar circumstances; namely, a respondent in an ongoing state university disciplinary proceeding seeking to enjoin that proceeding. *See, e.g., Doe v. Univ. of Ky.*, 860 F.3d

---

[5] "*Sprint* directs courts to a rule of thumb: if the case falls into one of the three settled categories, courts should go on to determine if federal involvement will in fact put comity at risk, but if the case does not, courts need go no further . . . ." *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 329 (4th Cir. 2022).

365 (6th Cir. 2017) (pending disciplinary proceeding for charges of violations of state university's Code of Student Conduct and sexual misconduct policy); *Sanchez v. Ariz. Bd. of Regents*, No. CV-15-01591-PHX-JAT, 2015 WL 6956288 (D. Ariz. Nov. 10, 2015) (pending disciplinary proceeding for charges of violations of state university's Student Code of Conduct); *Choudhry v. Regents of the Univ. of Cal.*, No. 16-cv-05281-RS, 2016 WL 6611067 (N.D. Cal. Nov. 9, 2016) (pending disciplinary proceeding for charges of violations of state university's Faculty Code of Conduct). Within the Fourth Circuit, at least one district court has recognized the increasing authority for the "conclu[sion] post-*Sprint* that *Younger* applies to school-related disciplinary proceedings." *Durstein v. Alexander*, No. 3:19-0029, 2019 WL 6833858, at *10 (S.D. W.Va. Dec. 13, 2019) (collecting cases, later holding that disciplinary proceeding by the West Virginia Department of Education for misconduct by a teacher in one of the Department's constituent county school systems was subject to *Younger* abstention).

### A. Category of Proceedings

Of the three categories of pending state proceedings that define *Younger*'s scope, the university disciplinary hearing clearly does not constitute either the first (a state criminal prosecution) or third (a civil proceeding involving an order furthering the state courts' judicial functions).

Regarding the second category, the Court has stated that its "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Sprint*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). Among the indicia of such a proceeding that the Supreme Court has described are that (1) "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act" (for example,

as in *Middlesex*, a state-initiated disciplinary proceeding against a lawyer for ethical violations); (2) "a state actor is routinely a party to the state proceeding and often initiates the action"; and (3) "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79–80.

Here, the university's disciplinary process was initiated to determine whether Plaintiff should be sanctioned—by "dismissal from the University . . . ; removal from University Housing; disciplinary probation"; or otherwise, ECF 14-7—for alleged sexual misconduct. A state actor—the university,[6] through UMD OCRSM—is a party to the disciplinary hearing,[7] and, after sending Plaintiff a "Notice of Investigation," ECF 14 ¶ 17 and/or a "Notice of Formal Complaint (NFC)," ECF 14-7, undertook an investigation into the sexual misconduct allegations, *Id.* at ¶ 17, culminating in charges brought against Plaintiff. ECF 14 at ¶ 26 (acknowledging, but not detailing, charges); ¶ 49 (acknowledging "individual charges brought against him"). Notices of hearings sent to Plaintiff reiterated that a determination that Plaintiff violated UMD's Policy could carry a sanction of suspension or expulsion. *Id.* at ¶ 31. These elements, evaluated against the criteria

---

[6] As noted by Defendant, "The University [of Maryland] is an entity of the State of Maryland. Md. Code Ann., Educ. §§ 12-102(a)(1)-(3) (LexisNexis 2022) (the University System of Maryland is 'an instrumentality of the State' and 'an independent unit of State government'); *id.* § 12-101(b)(6)(i)(2) (the University of Maryland, College Park is a constituent institution of the University System of Maryland)." ECF 20 at 7.

[7] In his TRO motion, Plaintiff raises but a single argument against *Younger* abstention. ECF 15-1 at 26–27. Relying on the Court's holding in *Sprint*, that a disciplinary action initiated by Sprint was not subject to *Younger* because Sprint was a private actor, Plaintiff argues that *Younger* is inapplicable here, where "[t]he individual complainants initiated the action as private citizens . . . ." ECF 15-1 at 27. This argument is not persuasive. First, the university is clearly a party to the proceeding. Moreover, even if it can be argued that the initial complaint was submitted to the UMD OCRSM by individual students, it is the university that initiates the disciplinary proceeding; indeed, Plaintiff alleged as much in his Amended Complaint. *See* ECF 14 at ¶ 10 (noting that, upon receipt of a complaint, UMD's Title IX Coordinator makes a determination as to whether the allegations could constitute a policy violation, and if the Coordinator determines they could, the Coordinator "must provide notice to the parties of initiation of the [university's] grievance process for resolving allegations of sexual misconduct.").

10

articulated in *Middlesex* and *Sprint*, evidence that UMD's disciplinary proceedings are sufficiently "akin to a criminal prosecution" to bring the proceedings within the ambit of *Younger*.

**B. The *Middlesex* Factors**

Having determined that the university's disciplinary proceedings fall within the second category of state proceedings to which *Younger* may apply, this Court next turns to the three conditions outlined in *Middlesex*, beginning with whether the disciplinary proceedings constitute an "ongoing state judicial proceeding." The university's disciplinary proceedings are clearly ongoing; Plaintiff concedes this point in both of his filings. *See* ECF 14 at 1; ECF 15 at 1. While two out of three scheduled hearings have already been held, no determinations have yet been reached regarding Plaintiff's responsibility. Further, the same hallmarks of a state proceeding "akin to a criminal prosecution" are among those that suggest the proceeding is "judicial" in nature. Plaintiff himself has detailed the stages of the university's "grievance process for investigating and sanctioning allegations of sexual harassment under Title IX and with regard to off campus activities in which the University has asserted jurisdiction," ECF 14 at ¶ 10, which are corroborated by the UMD Policy and Procedures which Plaintiff attaches to his Amended Complaint. *See* ECF 14-2. The Complainants filed a formal complaint with the university, the university provided Plaintiff with a notice of the complaint and of its initiation of an investigation into the allegations contained therein, and hearings were scheduled. Plaintiff has had the assistance of an advisor at the hearings and has had the opportunity to cross-examine witnesses.[8] ECF 14 at ¶ 35. In addition, the

---

[8] In his Amended Complaint, Plaintiff alleges that the "clear and unambiguous mandate of a 2025 Fourth Circuit case, *Doe v. University of Norh* [sic] *Carolina* Systems," (133 F.4th 305 (4th Cir. 2025)) was to require "cross-examination of witnesses and parties in both Title IX and non-Title-IX college sexual harassment proceedings." ECF 14 at ¶ 31. Without reaching the merits of Plaintiff's arguments regarding what he has alleged to be due process violations related to the hearing officers' potential consideration of statements made by witnesses who did not submit to cross-examination, and even ignoring Defendant's assertions, in her response in opposition to

proceedings potentially culminate in a declaration and enforcement of sanctions, a "final act" that is clearly adjudicative in nature (rather than legislative). *New Orleans Pub. Serv., Inc.*, 491 U.S. 350, 370–71 (1989) (citation omitted). Other courts, assessing the nature of state university disciplinary proceedings for purposes of *Younger* abstention, have found such elements to indicate a "judicial proceeding." *See, e.g., Sanchez*, 2015 WL 6956288, at *2 (noting, among other things, the presence of legal representation at a hearing and potential imposition of "tangible sanctions" as indicative of a "judicial proceeding")

The Supreme Court has suggested that the fact, alone, of a state civil proceeding being "akin to a criminal prosecution" may be sufficient evidence of an important state interest being implicated, *see Middlesex*, 457 U.S. at 432 ("The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature . . . ."). However, this Court need not rest its decision solely on that inferential ground, as there is little doubt that the university's disciplinary proceedings implicate important state interests in both protecting the university's students from sexual misconduct[9] and in the administration of its disciplinary process for such misconduct without interference.[10]

---

Plaintiff's TRO motion, regarding the opportunities afforded for cross-examination in the hearings held to date, this Court notes that, by Plaintiff's own Complaint, he was given the opportunity to cross-examine Complainant 1 during her appearance as a witness in the hearing for Complainants 2 and 3, but "declined to cross-examine her about the events in her complaint . . . ." *Id.* at ¶ 37.

[9] Notwithstanding the fact that the alleged sexual misconduct did not occur on its campus, UMD still has articulated an important interest in combating off-campus conduct that either "has continuing adverse effects on or creates a hostile environment for students, employees, or third parties" while on campus or in any university program or activity, or that "otherwise threatens the health and/or safety of University members." ECF 14-2 at 4 (UMD Policy § IV.A); ECF 14 at 5 n.2 (quoting same).

[10] *See Sanchez*, 2015 WL 6956288, at *3 (noting state's "strong interest in establishing a fair, transparent, and just disciplinary system"; "Furthermore, . . . Plaintiff has alleged that certain procedural elements of this important system are constitutionally unfirm. It is also clear that the state has a keen interest in ensuring that [the university] administrative procedures comply with

12

The final condition that must be satisfied for *Younger* to apply is that the state proceeding must provide an adequate opportunity for the federal plaintiff to raise his constitutional claims. "As the party asking a federal court to intervene, [Plaintiff] bears 'the burden' of showing that [he] lacks such an opportunity . . . because 'state procedural law bar[s] presentation of its claims.'" *Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 150 (4th Cir. 2024) (quoting *Pennzoil Co. v. Texaco*, 481 U.S. 1, 14 (1987)). "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" *Middlesex*, 457 U.S. at 432 (quoting *Moore*, 442 U.S. at 426).

In the university disciplinary proceedings at issue here, there is no policy that "clearly bars" Plaintiff from raising his constitutional claims. Indeed, he has already done so multiple times; the fact that his efforts have been met with varying results does not negate the fact that he has had that opportunity,[11] nor the fact that he would have the opportunity to raise them again on appeal should he desire it. UMD's Procedures expressly identify a "procedural irregularity" "that affects the

---

the federal constitution."); *Univ. of Ky.*, 860 F.3d at 370 (noting state's interest in "establishing a fair and constitutionally permissible disciplinary system").

[11] Early in the proceedings, Plaintiff raised his concerns regarding the consolidation of multiple complaints into a single investigative report and single proceeding; in response, the university severed the proceedings into three separate investigations and hearings. Plaintiff has raised his constitutional claims both in person during the live hearings and in letters to each of the hearing officers assigned to the respective hearings. His Amended Complaint alleges that he wrote such a letter to the hearing officer assigned to the second hearing (at which the complaints filed by Complainants 2 and 3 would be adjudicated), and the hearing officer "stated that he would make Plaintiff's letter part of the record, but proceeded with the hearing." ECF 14 at ¶ 35. This procedure does not indicate a "bar" to interposition of Plaintiff's constitutional claims. As a point of comparison, a recent opinion by the Honorable Judge Griggsby of this Court conveyed skepticism that a plaintiff had been afforded an adequate opportunity to present federal constitutional claims in a state judicial misconduct proceeding where the plaintiff had alleged that the commission presiding over the proceeding had "entered an order prohibiting her from questioning Defendants . . . about allegations concerning First Amendment retaliation and the subject matter, causes of action, and/or alleged injuries and damages raised in the Plaintiff's federal lawsuit . . . ." *Ademiluyi v. Albright*, No. 23-cv-03526-LKG, 2025 WL 846450, at *9 (D. Md. Mar. 18, 2025) (slip copy) (cleaned up).

ultimate outcome of the designation or the written determination" as one of the bases for the written appeal of a designation or determination. ECF 14-2 at 36 (UMD Procedures § VI.D.9.a.i).[12] At the conclusion of the appeal deliberation, the Appellate Hearing Officer(s) may, among other outcomes, "remand the case to remedy procedural errors, remedy a conflict of interest or bias, or consider new evidence." ECF 14-2 at 38 (UMD Policy & Procedures § VI.D.9.c.vii.d). Thus, contrary to Plaintiff's assertion in his TRO motion, it is not the case that the procedural due process violations he alleges "can only be remedied by the issuance of a temporary restraining order and/or a preliminary injunction." ECF 15 at 3.

In similar circumstances to those of the instant case—a federal plaintiff bringing an action in federal court seeking to enjoin a state university's disciplinary proceedings based on alleged due process violations—multiple courts have concluded that, where the university's internal disciplinary process provides for another level of review beyond the initial adjudicator's decision, an adequate opportunity to raise such constitutional claims exists, and *Younger* abstention is appropriate. *See, e.g.*, *Univ. of Ky.*, 860 F.3d at 371 ("Doe can appeal after the third hearing . . . if he believes the hearing still suffers from constitutional error, and he may raise his claims again in federal court once the proceedings have concluded."); *Sanchez*, 2015 WL 6956288, at *3 (noting

---

[12] The Policy and Procedures provide that "[a] procedural irregularity affecting the designation or the written determination may include: a failure to follow the University's procedures; a failure to objectively evaluate all relevant evidence, including inculpatory or exculpatory evidence; or a determination regarding what evidence was excluded as irrelevant." ECF 14-2 at 37 (UMD Procedures § VI.D.9.i.b). Plaintiff has alleged that Defendant departed from UMD's Policy and Procedures in the course of his case, and Defendant, in her response to Plaintiff's Amended Complaint and TRO Motion, has expressly stated that Plaintiff "has the right to appeal any of the decisions in these proceedings, including on the grounds of procedural irregularity or bias." ECF 20 at 8. This statement echoes those Defendant previously made in responding to Plaintiff's original complaint and request for injunctive relief. *See* ECF 6 at 20 ("[B]ecause [Plaintiff] has the ability to appeal any unfavorable decision on the grounds of procedural irregularities, Sexual Misconduct Policy, Ex. 4 at Procedures Section VI.D.9, he has failed to show that the denial of his request to address these issues a second time during the hearing deprived him of due process.").

that "[t]he proceeding Plaintiff seeks to enjoin—the [University Hearing Board] hearing—is the intermediate level of ASU's disciplinary system[,]" and that Plaintiff could still request review of his case—and raise his constitutional claims before—the Vice President of Student Affairs)..

In sum, Plaintiff has not met his burden of showing that the university's disciplinary process fails to provide him an adequate opportunity to raise his constitutional claims. *Erie Ins. Exch.*, 105 F.4th at 150.

### C. Exceptions to *Younger* Abstention

As mentioned, even when all conditions warranting *Younger* abstention are satisfied, certain "extraordinary circumstances" may require the federal court to decline abstention. The Supreme Court has stated that, "in view of the fundamental policy against federal interference with state [proceedings]," *Younger*, 401 U.S. at 46, "a movant must show not merely the 'irreparable injury' which is a normal prerequisite for an injunction, but also must show that the injury would be 'great and immediate.'" *Huffman*, 420 U.S. at 601 (quoting *Younger*, 401 U.S. at 46). "[T]he mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." *Choudhry*, 2016 WL 6611067, at *7 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 484–85 (1965)). "For this reason, courts have applied *Younger* in comparable cases, even where plaintiffs have alleged due process violations." *Choudhry*, 2016 WL 6611067, at *7. *See also Moore*, 442 U.S. at 426 n.10 (1979) ("The . . . argument that a constitutional attack on state procedures automatically vitiates the adequacy of those procedures for purposes of the *Younger-Huffman* line of cases is reiteration of a theme sounded and rejected in prior cases.").

The two most examined exceptions to the doctrine, which *Younger* articulated against this backdrop, are (1) where the state proceedings were "motivated by a desire to harass or . . .

conducted in bad faith"; and (2) where the challenged state statute or procedure is "flagrantly and patently violative of express constitutional prohibitions." *Huffman*, 420 U.S. at 611 (internal quotation marks omitted); *see also Younger*, 401 U.S. at 53–54 (acknowledging that a "flagrantly and patently" unconstitutional state statute could constitute an "extraordinary circumstance[]" sufficient to warrant federal intervention in state proceedings "even in the absence of the usual prerequisites of bad faith and harassment."). Based on Plaintiff's Amended Complaint, neither of these circumstances are clearly present here.

First, abstention is not warranted "if plaintiffs can show that the state official is bringing the action in bad faith or for the purpose of harassment, *Younger*, 401 U.S. at 47–49, . . . or if the state agency is 'incompetent by reason of bias to adjudicate the issues pending before it.'" *Fuller v. Bartlett*, 894 F. Supp. 874, 879 (D. Md. 1995) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)). "Bad faith in this context 'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" *Suggs v. Brannon*, 804 F.2d 274, 278 (4th Cir. 1986) (quoting *Kugler v. Helfont*, 421 U.S. 117, 126 n.6 (1975)). Plaintiff has not ascribed any such motivation to Defendant; while he may take issue with Defendant's responses to his raising of certain procedural concerns, there are no allegations that the proceedings were initiated against him frivolously or for purposes of harassment. Further, while Plaintiff does allege that the inclusion of what he characterizes as "irrelevant" witness statements in the severed investigation reports "was intentional, the intent being to prejudice the Plaintiff's right to a fair and impartial hearing," ECF 14 at ¶ 45, this conclusory assertion is not a sufficient basis upon which this Court could find "extraordinary circumstances" exist warranting an exception to *Younger*.

In addition, Plaintiff has not demonstrated that the university's Policy and Procedures, as applied to his case by Defendant, are "flagrantly and patently violative of express constitutional

16

prohibitions." Plaintiff alleges that the university's decision—at Defendant Nastase's "explicit[] instruct[ion]," ECF 14 at ¶ 79; ECF 14-7—to follow the holding of *Victim Rts. L. Ctr. v. Cardona*, 552 F. Supp. 3d 104 (D. Mass. 2021) and thus allow for consideration of statements of witnesses not subject to cross-examination in determining responsibility is counter to the Fourth Circuit's holding, in *Univ. of N.C. Sys.*, that "respondents in sexual harassment adjudications on college campuses, under Title IX or state law, are entitled to *meaningful* cross-examination of their accusers and witnesses as a matter of procedural due process." ECF 14 at ¶ 43. However, these allegations are not sufficient to demonstrate that the UMD Policy and Procedures meet the extraordinarily high bar for invocation of the "flagrantly and patently" unconstitutional exception to *Younger*, which the Supreme Court has stated applies only "where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions *in every clause sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it*.'" *Huffman*, 420 U.S. at 602 (quoting *Younger*, 401 U.S. at 53–54) (emphasis added). Indeed, the Fourth Circuit has gone as far as to note that this is a "standard so rigorous as to make the exception . . . meaningless." *Simopoulos*, 644 F.2d at 329 (internal quotation marks removed).

Courts often treat the two exceptions discussed above as an exhaustive list when assessing *Younger* abstention. The Supreme Court itself has, on multiple occasions, applied this approach, without assessing the existence of other "extraordinary circumstances." *See Huffman*, 420 U.S. at 611; *Juidice v. Vail*, 430 U.S. 327, 338 (1977). However, *Younger* also acknowledged the possibility of other "extraordinary circumstances" or "unusual situations calling for federal intervention," *Younger*, 401 U.S. at 53–54. "The scope of the exception to the general rule of equitable restraint for 'other extraordinary circumstances' . . . [was] left largely undefined" by the Court. *Kugler v. Helfant*, 421 U.S. 117, 124 n.4 (1975). The Fourth Circuit, acknowledging that

17

"[n]either the Supreme Court nor our Circuit has delineated an exhaustive list of situations that rise to the level of extraordinary circumstances[,]" asserted that its "prior decisions suggest there must be actual impediments to the state's ability to address the federal issues." *Air Evac EMS, Inc.*, 37 F.4th at 99–100; *see also Simopoulos*, 644 F.2d at 328 (noting that, apart from the exception for a "flagrantly and patently" unconstitutional state statute, "all the exceptions based on 'exceptional considerations,' have involved situations in which the federal plaintiff's claim for federal relief was not such as could be resolved in a pending state proceeding.").

Thus, the Fourth Circuit has acknowledged that the "extraordinary circumstances" inquiry "overlaps with the third *Middlesex* factor, which is something we consider *before* analyzing the exceptions to *Younger* abstention. . . . But this overlap merely highlights the importance of deferring to the state proceedings as long as the litigants have a fair shot at advancing their positions." *Air Evac EMS, Inc.*, 37 F.4th at 100 n.4. Here, this Court has already determined that Plaintiff has had, and through the availability of appeal (should he wish to pursue it) continues to have the opportunity to raise his constitutional claims in the university's disciplinary proceedings. Plaintiff has not alleged "extraordinary circumstances" that would preclude his constitutional concerns being addressed through UMD's disciplinary proceeding. If, on appeal, his concerns are treated favorably, the UMD Procedures provide for remand. The "extraordinary circumstances" needed to satisfy the "exceedingly narrow" third exception to *Younger* are not present here. *Air Evac EMS, Inc.*, 37 F.4th at 100.

### III.   DISMISSAL

This Court notes considerable authority standing for the proposition that, where *Younger* demands abstention from adjudication of claims for equitable relief, courts should dismiss those claims outright. *See, e.g.*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996) ("[F]ederal

courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."); *Nivens v. Gilchrist*, 444 F.3d 237, 246–47 (4th Cir. 2006) (collecting cases); *Ward v. Simpers*, No. RDB-07-3266, 2008 WL 2271486, at *4 (D. Md. May 29, 2008) ("*Younger* is not merely a principle of abstention; rather, the case sets forth a mandatory rule of equitable restraint, requiring the dismissal of a federal action.") (quoting *Nivens*, 444 F.3d at 247). Here, Plaintiff's Amended Complaint sought only equitable relief; therefore, this Court will dismiss the Amended Complaint, with prejudice.[13]

## IV.  CONCLUSION

For the reasons stated above, this Court concludes that *Younger* requires it to abstain from intervening in the ongoing sexual misconduct proceedings at UMD in which Plaintiff is currently engaged. Thus, Plaintiff's Motion for Temporary Restraining Order, ECF 15, will be DENIED, and his Amended Complaint, ECF 14, DISMISSED WITH PREJUDICE. A separate Order follows.

Dated: October 23, 2025

/s/
Stephanie A. Gallagher
United States District Judge

---

[13] "When *Younger* abstention is invoked against claims seeking only injunctive or declaratory relief, those claims are usually . . . dismissed with prejudice." *Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty.*, 105 F.4th 554, 559 (4th Cir. 2024) (citing *Nivens*, 444 F.3d at 247–48). That dismissal of Plaintiff's claims must be with prejudice is intuitive. Because the claims for declaratory and injunctive relief in Plaintiff's Amended Complaint asked this Court to interfere in the ongoing state proceedings, and the ongoing nature of the proceedings is precisely what implicates *Younger*, there is no future scenario in which this Court could adjudicate those claims. "[W]hen a district court abstains from a case based on *Younger*, it should typically dismiss the case with prejudice; not on the merits, . . . but instead because *the court is denied the equitable discretion ever to reach the merits*." *Nivens*, 444 F.3d at 247 (emphasis added). This Court notes, however, that the fact that Plaintiff cannot again raise his claims seeking to enjoin the ongoing proceedings does not mean he would be precluded from bringing claims in this Court for injunctive relief regarding the *ultimate resolution* of those proceedings (at that point, with state proceedings complete, *Younger* would no longer be implicated).